UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-209-R

MIDWEST ENVIRONMENTAL RESOURCES
INTERNATIONAL, LLC, Successor in Interest to
MIDWEST RAILCON PROPERTIES, LLC,                                    Plaintiff

v.

COLONY INSURANCE COMPANY, *et al*,                                 Defendants

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on two pending motions.  First, Defendant Colony Insurance Company has filed a Motion for Summary Judgment. (Docket No. 37).  Plaintiff Midwest Environmental Resources International, LLC, has responded (Docket No. 50).  Second, Plaintiff filed a Motion for Summary Judgment.  (Docket No. 42).  Defendant has responded. (Docket No. 45).  These matters are now ripe for adjudication.  For the following reasons, the Court will **DENY** Defendant's Motion for Summary Judgment and **DENY** Plaintiff's Motion for Summary Judgment.

## BACKGROUND

Plaintiff Midwest Environmental Resources International, LLC, ("MERI") owned a warehouse at 800 N. College Street in Fulton, Kentucky ("the property").  MERI placed insurance coverage on the property through the Defendant, Colony Insurance Company ("Colony").  MERI initiated this litigation, seeking a declaratory judgment that the insurance policy issued by Colony provides coverage for the claims that MERI asserted.

1

Unknown persons broke into the property and took copper wiring and electrical system components from the building, as well as causing damage to the door.  Colony argues that there is no coverage for these losses because the commercial property insurance policy excludes coverage for any damage "caused by or resulting from theft."  (Docket No. 37).  Further, even if the damage were deemed to have resulted from vandalism, as MERI claims, Colony argues that there is still no coverage because the property was vacant under the policy's definition and vandalism is precluded as a cause of loss for vacant property.  *Id.*

MERI argues that the damage to the property was at least in part due to vandalism, not theft.  (Docket No. 50).  Further, it argues that the property did not meet the definition of "vacant" and thus the damage due to vandalism is covered by the policy.  *Id.*

<u>Insurance policy</u>

The policy contains the following provisions:

A. Covered Causes Of Loss

When Basic is shown in the Declarations, Covered Causes of Loss means the following:

. . .

8. Vandalism, meaning willful and malicious damage to, or destruction of, the described property.

We will not pay for loss or damage caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars

E. Loss Conditions

6. Vacancy

a. Description of Terms

2

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

b. Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

3

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

<u>Theft or vandalism</u>

MERI claims that the damage was caused by acts of vandalism, including "broken lightbulbs, orange spray paint, and/or damage for the sake of damage."  (Docket No. 50).  In support, it attached a series of photographs that show orange spray paint on the floor of the warehouse.  *Id.*  Additionally, MERI points to the testimony of Scott Brewer, who stated that electric boxes and wiring were affected, and described graffiti, metal that had been pulled away, and various types of wall damage.  (Docket No. 42-4).  Further, he stated that the "[v]andalism included ripped back screens, air ducts, electrical control panels, piping and conduit that was pulled and damaged throughout the building, lighting fixtures that were busted, either knocked down or shot down glass.  There were some broken windows, some fan motor access points, insulation as well as ceiling tiles, graffiti that was sprayed in – in locations. [In addition, there was evidence] of people eating and leaving beer bottles and food wrappers and various contents in the building."  *Id.*

Colony argues that the damage was due to theft.  When the claim was first submitted by Brian Rotolo on April 24, 2013, it was described as a "theft of significant copper leads in the building."  (Docket No. 37-12).  Colony's third-party adjustor, Eddie Mayhall, testified that he was instructed by both Colony and MERI to treat the claim as a theft claim.  (Docket No. 37-11). On August 16, 2013, MERI submitted its Sworn Statement in Proof of Loss, which left the origin and cause of the loss blank.  (Docket No. 37-14).  On September 6, 2013, MERI submitted its

4

second Sworn Statement, describing the claim as one for "vandalism and destruction of property." (Docket No. 37-15). Colony alleges that MERI changed the description of the loss in order to make sure their loss was covered.

Vacancy of the warehouse

Colony alleges that even if the loss were due to vandalism and not theft, it would not be covered because the warehouse was vacant. In support, Colony notes that the Commercial Insurance Application stated that the property was a "vacant warehouse" that was 0% occupied. (Docket No. 37-3). The Vacant Building Supplemental Application stated that the Current Building Use was "none (storage)" and that the Vacant Area was "all." (Docket No. 37-4). An email received by Colony after these forms were submitted clarifies that the building was "not energized" but that it was being used as a storage facility. (Docket No. 37-5).

Karen Brown, independent contractor for Brown Scholarship Enterprises, provides loss control survey services to a company called US-Reports, Inc. She surveyed the property on December 20, 2012 and provided a report indicating that the property was a vacant warehouse with no contents. (Docket No. 37-7). Further, Eddie Mayhall, the independent adjustor who visited the building on May 8, 2013 and June 28, 2013, stated that he remembered seeing a camper trailer and two job trailers in the warehouse, but that other than that "the building was empty." (Docket No. 37-11).

MERI argues that the warehouse was not vacant, in that it was being used in the capacity for which it was intended, namely "a storage and/or staging facility." (Docket No. 50). MERI explained its paperwork as indicating that there would not be people using the building, not that the building would not be in use at all. *Id.* MERI points to the testimony of Scott Brewer, noting that he was the only witness present in the warehouse around the time of the loss. Brewer stated

5

that the customary operations of MERI were "responding to environmental disasters, environmental projects, emergency response throughout the various regions - - essentially in conjunction with the warehouse." (Docket No. 50). He also stated that assuming the warehouse was about 145,000 square feet, about 70,000 square feet, or 50% of the warehouse was in use for customary business as of February of 2013; he also provided an inventory of all the items that were in the warehouse, though it is not dated. *Id.* MERI notes that Colony did not have an eyewitness in the building around this time, and that this testimony at the least creates a question of fact precluding summary judgment.

### STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of

material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while the substantive law of Kentucky is applicable here pursuant to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993), abrogated on other grounds by *Hertz Corp. v. Friend*, 559 U.S. 70 (2010).

## DISCUSSION

It is well settled that the proper interpretation of insurance contracts is a matter of law to be decided by a court. *E.g., Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010). "Policies should be interpreted according to the parties' mutual understanding at the time they entered into the contract and '[s]uch mutual intention is to be deduced, if possible, from the language of the contract alone.'" *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131–32 (Ky. 1999) (alteration in original) (quoting *Simpsonville Wrecker Serv., Inc. v. Empire Fire & Marine Ins. Co.*, 793 S.W.2d 825, 828–29 (Ky. 1990)).

Under Kentucky law, "[w]here the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Kemper Nat. Ins. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002) (internal citations omitted). An otherwise clear contractual term may be ambiguous where reasonable people can assign different or inconsistent interpretations. *Auto–Owners Ins. Co. v. Goode*, 294 S.W. 3d 32, 36 (Ky. Ct. App. 2009) (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002)). "[W]hen a contract is susceptible of two meanings, it will be construed strongest against the

party who drafted and prepared it." *Perry v. Perry*, 143 S.W.3d 632, 633 (Ky. Ct. App. 2004) (quoting B. *Perini & Sons, Inc. v. S. Ry. Co*., 239 S.W.2d 964, 966 (Ky. 1951)).

Here, the parties dispute whether the losses incurred are the result of theft or vandalism. Colony has provided evidence that MERI originally labeled the loss as resulting from a theft, while MERI provided evidence that the property was vandalized.  If the loss is from a theft, than Colony's Policy clearly does not cover it.   However, this is a genuine issue of material fact preventing summary judgment, as both parties have provided "more than a mere scintilla of evidence" in support of their positions.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).   Further, the parties dispute whether the property was vacant at the time the damage occurred.  Colony has presented evidence that the warehouse was nearly empty, while MERI has provided testimony stating that the property was in use and that that nearly 50% of the warehouse was used for storage.   Again, the parties have provided enough contradictory evidence to make this factual dispute a genuine issue of material fact.   While the proper interpretation of insurance contracts is a matter of law to be decided by a court, *see Cincinnati Ins. Co.*, 306 S.W.3d at 73, these factual issues prevent the Court from applying the insurance policy.  Thus, both motions will be denied.

## CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment, (Docket No. 42), is **DENIED** and Defendant's Motion for Summary Judgment, (Docket No. 37), is **DENIED**.